UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHLEEN WHELEHAN,

                Plaintiff,

v.

BANK OF AMERICA,
BANK OF AMERICA PENSION PLAN FOR
LEGACY COMPANIES-FLEET-TRADITIONAL
BENEFIT,
And
TRUSTEES OF BANK OF AMERICA PENSION
PLAN FOR LEGACY COMPANIES-FLEET-
TRADITIONAL BENEFIT,

                Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Civil Action No.: 13-cv-06279(FPG)

## STATEMENT OF THE CASE

Plaintiff Kathleen Whelehan brought this action asserting four causes of action: an action pursuant to ERISA §502(a)(1)(B) to enforce her claim of benefits under the Plan, an action pursuant to ERISA §501(a)(1)(A) seeking to enforce rights under §502(c) to compel the production of documents related to the operation of the Plan, a breach of fiduciary duty claim against the Defendant Bank of America pursuant to §502(a)(2), and a breach of fiduciary duty against the fiduciary of the Plan pursuant to §502(a)(2). Defendants have moved this court for summary judgment determining that its denial of Whelehan's application for benefits is subject to a deferential standard of review, that the review by this Court is limited to the administrative record before the Plan Administrator, and upholding the Plan's denial of benefits to Whelehan.

1

Plaintiff files this memorandum of law in opposition to Defendants' motion. Plaintiff maintains that the Court must deny or defer consideration of the motion to allow time for Plaintiff to have discovery concerning factors which the Court must take into consideration in determining if the Plan Administrator's decision is arbitrary or capricious.

## ARGUMENT

### POINT I

**Defendants' Motion is Premature.**

While a motion for summary judgment may be made at any time prior to a date thirty days after the close of all discovery, (Fed. R. of Civ. Proc., Rule 56), pre-discovery summary judgment is granted only in the rarest cases. <u>Miller v. Walpole & Abramson LLP</u>, 321 F.3d 292, (2d Cir. 2003)

> Accordingly, we have held that summary judgment should only be granted if "*after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."*Hellstrom v. United States Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000) (internal quotation marks omitted) (alterations in original). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Id.; accord Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989) ("Under Rule 56(f), summary judgment may be inappropriate where the party opposing it shows ... that he cannot at the time present facts essential to justify his opposition. The nonmoving party should not be `railroaded' into his offer of proof in opposition to summary judgment. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." (internal quotations and citations omitted)).

321 F. 3d at303-304

The record before the Court cannot support summary judgment. The Plan Administrator has failed to assemble records which, by statute, the Plan and/or the employer are required to maintain. For example, at this point, the record does not even contain copies of the benefit plans at issue. Defendants are asking the Court to fund, as matter of law, that the Plan Administrator's interpretation and application of the Plan language is not arbitrary or capricious but have not produced the Plan language?

Defendants' failure to collect information from the Bank, including copies of the prior plan, employment records and tax filings demonstrates that the Plan Administrator has failed to act in the interest of the participant as required by ERISA. Discovery with respect to all of the issues must be allowed.

## POINT II

### The Deferential Standard Requires the Court to Accommodate Multiple Factors.

The degree of deference afforded the decision of a fiduciary is dependent on the degree to which the fiduciary is free of conflict of interest. Fundamental to the administration of employee benefits under ERISA is the statutory imposition, upon a fiduciary, of the prudent man standard of care.[1] To the extent that a fiduciary is acting solely in the interest of participants and beneficiaries under a plan which vests that fiduciary with discretionary authority to interpret and apply the terms of the plan, the courts properly defer to the decisions of the fiduciary. Where the fiduciary is independent, the deferential standard requires

---

[1] ERISA §404(a)(1) imposes upon a fiduciary the obligation to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and - …(d) in accordance with the documents and instruments governing the plan."

3

a court to uphold the decision of the administrator unless it is arbitrary or capricious. Firestone Tire and Rubber v. Bruch, 289 US 101 (1989). On the other hand, where it can be shown that a fiduciary is not acting solely in the interest of participants and beneficiaries but also is addressing an interest of the employer, that fiduciary is operating under a conflict of interest. As the Supreme Court held in Firestone:

> Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. (Internal quotation marks omitted)
> 489 US at 115.

Nine years later, the Supreme Court in Metropolitan Life v. Glenn, 554 US 105 (2008), explained Firestone by holding that where the entity responsible for funding the benefit is the same entity that is determining the merits of the claim, a conflict of interest exists. The greater the conflict of interest, the greater the level of scrutiny to be imposed by the court. The deferential standard is applied but the degree of deference must reflect the conflict of interest. The Second Circuit, in McCauley v. First Unum Life Insurance Company, 551 F. 3d 126 (2d Cir. 2008) explained that the conflict of interest (and other factors affecting the decision of the fiduciary) does not afford the claimant a de novo review, but requires the trial court to take into account the actions of the decision maker as evidence of interest and the degree to which the decision of the fiduciary is entitled to deference.

The Defendant Plan is apparently maintained by Bank of America to pay the pension obligations of banks which have merged into BOA. It must be

4

assumed that the corpus of the trust consists of the assets of the merged pension plans. As its name indicates, the Plan is intended to pay legacy obligations of Bank of America. If the assets of the merged plans are not sufficient to pay vested legacy benefits, BOA is ultimately responsible for assuring the benefits are paid. If BOA picked up an underfunded defined benefit pension plan along the way or if one of the merged plans failed to keep adequate records, BOA is on the hook. The Plaintiff is entitled to discovery on the relationship between the Benefits Committee and BOA. If BOA, as guarantor of the benefit controls the Benefit Committee, a conflict of interest exists.

The Plan appears to be functioning as a filter determined to limit the number of pensions awarded by insisting that participants prove their entitlement to benefits without any records from the Bank.

## POINT III

**Plaintiff is Entitled to Discovery With Respect to the Factors Affecting the Decision of the Plan Administrator.**

Plaintiff is entitled to discovery with respect to conflict of interest and other factors. The scope of such discovery is left to the sound discretion of District Court. <u>Frommert v. Conkright</u>, 535 F. 3d 111 (2d Cir. 2013). Factors which Plaintiff needs to explore are summarized below:

> **What efforts were made to obtain payroll information from the Bank?**
>
> > Employers are obligated to maintain records of wages paid to employees:

5

(a) In general.

(1) Every employer liable for tax under the Federal Insurance Contributions Act shall keep records of all remuneration, whether in cash or in a medium other than cash, paid to his employees after 1954 for services (other than agricultural labor which constitutes or is deemed to constitute employment, domestic service in a private home of the employer, or service not in the course of the employer's trade or business) performed for him after 1936. Such records shall show with respect to each employee receiving such remuneration--

(i) The name, address, and account number of the employee and such additional information with respect to the employee as is required by paragraph (c) of section 31.6011(b)-2 when the employee does not advise the employer what his account number and name are as shown on an account number card issued to the employee by the Social Security Administration.
26 CFR 31.6001-2

- ≤ERISA §209:

**§209(a)**
**(1)** Except as provided by paragraph (2) every employer shall, in accordance with such regulations as the Secretary may prescribe, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees. The plan administrator shall make a report, in such manner and at such time as may be provided in regulations prescribed by the Secretary, to each employee who is a participant under the plan and who—
    **(A)** requests such report, in such manner and at such time as may be provided in such regulations,
    **(B)** terminates his service with the employer, or
    **(C)** has a 1-year break in service (as defined in section 203(b)(3)(A) of this title).
The employer shall furnish to the plan administrator the information necessary for the administrator to make the reports required by the preceding sentence.

> **Did the Plan, or any predecessor plan, issue notices to vested terminees as required by ERISA §209?**
>
> **If the prior plans in fact did issue periodic statements of accrued benefits and notices to vested terminees as required by ERISA §209, did the prior plan's SPD require the participant to produce copies of those documents in order to receive a pension benefit?**

6

In <u>Wilkins v. Mason Tenders' Dist. Council Pension Fund</u>, 2006 U.S. App. Lexis 10183 (2d Cir. 2006), the claimant sought to have his record of contribution maintained by the plan corrected. Wilkins noted a significant variance between the earnings that some of his employers reported to the multiemployer fund and the records of wages they reported to the Social Security Administration. The fund required Wilkins to produce a copy of paystubs in order to challenge the plan records of hours of contribution. Wilkins argued that the requirement of producing paystubs was arbitrary and capricious. The Second Circuit rejected Wilkins' challenge to the paystub policy, but did set aside the denial of benefits on the grounds that while the plan could adopt such a policy requiring additional evidence to be submitted by participants, notice of that requirement must be included within the plan and the SPD. Relying on ERISA's requirement that the SPD set forth not only the plan's requirement with respect to eligibility for participation in benefits, but also "circumstances that may result in a disqualification, ineligibility, or denial or loss of benefits" (ERISA §102, 29 USC §1022(b)), the Circuit held that failure to inform participants of the consequences of not retaining these records would allow the District Court to look at other records, such as Social Security earnings records to determine eligibility for benefits.

**What consideration, if any, did the Plan Administrator give to the Social Security Record of Earnings?**

The Social Security Record of Earnings is a determination by the Social Security Administration of the work record of an individual. The record is

conclusive evidence for purposes of Social Security benefits. While it is not argued that it is conclusive with respect to the Plan Administrator, it certainly cannot be ignored.

**Did the Plan Administrator request the Bank to provide employment records?**

As alleged in the Amended Complaint, Whelehan was a Vice President of Security Trust. There must be corporate records concerning her service in addition to the tax and benefit records described above.

CONCLUSION

The Defendants' motion for summary judgment is premature and must be denied.

Dated: January 27, 20142       /s/Michael T. Harren_____
                                            Michael T. Harren, Esq.
                                            Chamberlain D'Amanda
                                            Oppenheimer & Greenfield
                                            Attorneys for Plaintiff
                                            Two State Street
                                            1600 Crossroads Building
                                            Rochester, NY 14614
                                            585-232-3730
                                            mharren@cdog.com