UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHLEEN WHELEHAN,

                              Plaintiff,     **No. 6:13-CV-6279(MAT)**
       -vs-                                   **DECISION AND ORDER**

BANK OF AMERICA PENSION PLAN FOR
LEGACY COMPANIES-FLEET-TRADITIONAL
BENEFIT, TRUSTEES OF THE BANK OF
AMERICA PENSION PLAN FOR LEGACY
COMPANIES-FLEET-TRADITIONAL BENEFIT
and BANK OF AMERICA,

                              Defendants.
_____

## I.    Introduction

Kathleen Whelehan ("Plaintiff" or "Whelehan") claims that she
was improperly denied retirement benefits under The Bank of America
Pension Plan for Legacy Fleet (the "Plan") in connection with her
alleged employment at certain predecessor banks to Bank of America
Corporation. Plaintiff instituted this suit pursuant to the
Employee Retirement Income Security Act of 1974, as amended, 29
U.S.C. § 1001 et seq. ("ERISA"). Defendants The Bank of America
Pension Plan for Legacy Fleet, Trustees of The Bank of America
Pension Plan for Legacy Fleet and Bank of America Corporation
(s/h/a, Bank of America Pension Plan for Legacy Companies-Fleet-
Traditional Benefit, Trustees of the Bank of America Pension Plan
for Legacy Companies-Fleet-Traditional Benefit and Bank of America)
(collectively, "Defendants") have moved for summary judgment
pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule

56"). Plaintiff has moved for partial summary judgment, seeking a determination that she is a "participant" as defined in ERISA 3(7).

## II.  Factual Background and Procedural History[1]

### A.   The Plan Document

The Plan is an employee pension benefit plan within the meaning of §3(2)(A) of ERISA, 29 U.S.C. §1002(2)(A). The "Plan Administrator" is defined as the "Bank of America Corporation Corporate Benefits Committee", and it possesses the sole discretionary power to construe the Plan's terms, determine who is eligible for benefits, and review claims regarding the denial of benefits. Under the Plan, the Plan Administrator is given full authority to interpret, and to apply in its sole discretion, the Plan's provisions. <u>See</u> Plan, Article X, § 10.4(b) ("Powers of the Committee"). The Plan Administrator's powers include, but are not limited to, "supplying omissions from, correcting deficiencies in, or resolving inconsistencies or ambiguities in, the language of the Plan." <u>Id.</u> Section 10.4(b)(ii) provides that the Plan Administrator "shall have the duty and power to make determinations and findings, including without limitation, determinations of factual questions, with respect to all questions that shall arise thereunder, including in connection with the determination of claims in accordance with Article XIV." <u>Id.</u>

---

[1] Except where noted, the facts set forth in this section are undisputed.

-2-

Article XIV, Section 14.1(g) ("Discretionary Authority") further provides that "[t]o the extent of its responsibility to review the denial of benefit claims, the [Bank of America Corporation Corporate Benefits] Committee shall have full authority to interpret and apply in its sole discretion the provisions of the Plan. . . ." Id.

**B.   Plaintiff's Claim for Benefits**

Sometime before July 28, 2011, Plaintiff inquired about pension benefits possibly owing to her under the Plan. On July 28, 2011, Plaintiff received a form letter from the Bank of America Employee Retirement Benefits Center stating, "Our records do not indicate that you have pension benefit due from the Plan." Exhibit ("Ex.") B-1.[2] Plaintiff was advised that if she felt she had such a benefit, she should fill out the enclosed Prior Employment Questionnaire and return it "with documentation of her benefit." Id. On the partially completed Prior Employment Questionnaire submitted on August 29, 2011 (Ex. B-2), Plaintiff indicated that she worked at "Security Trust Co Fleet Bank" from July 10, 1972, to "6/88". Id. The Questionnaire also requested that she provide "copies of any documentation . . . that verifies [her] employment history" such as "pay stubs or W-2 forms", and any additional information from the listed employer regarding retirement benefits,

---

[2]

Exhibits A (Dkt #22-4) and B-1 through B-10 (Dkt #22-5) are attached to the Affidavit of Freda S. White (Dkt #22-3), submitted in support of Defendants' Motion for Summary Judgment (Dkt #22).

such as "a Social Security Administration Potential Private Pension Benefit Information letter, prior benefit calculations or other document(s) from Bank or America, or other employer named above." Id. The only documentation Plaintiff submitted was the following: (1) a copy of an unsworn, unsigned email dated October 26, 2011, from Robert Bantle ("the Bantle email"), purportedly a former colleague at Security Trust Co., stating that Plaintiff had been a full-time employee at Security Trust Co. and its successor organizations from July 1972, through June 1988; (2) a form purportedly submitted to the Social Security Administration ("SSA") by Security Trust Co. for one quarter of 1972, on which the name "KA Whelehan" appears; and (3) uncertified documentation from the SSA purportedly showing earnings for Plaintiff for the Bath Volunteer Fire Department.[3] See Ex. B-2.

On September 1, 2011, Plaintiff received a form letter from the Bank of America Employee Retirement Benefits Center stating that they had reviewed her Prior Employment Questionnaire and documents, but "[s]ince [they] have no record of a vested pension benefit for [her] and there are no documents indicting [sic] a benefit due, [they] have determined there is no deferred vested pension benefit payable to [her] from the Plan." Ex. B-2.

---

[3]

Plaintiff asserts that this was the result of an incorrect employer identification number ("EIN") (i.e., the EIN for the fire department) being linked to her Social Security Number.

-4-

On October 27, 2011, Plaintiff sent a letter to Bank of America, requesting review of the September 1st denial of benefits. Plaintiff stated,

> In addition to the documents proving that Security Trust Co submitted my wages to Social Security with the wrong EIN, proof that I was on the payroll roster, and proof that I have attempted to clean up the records, I am enclosing a letter from the former SVP of HR at Security Trust Co/Norstar bank/Fleet Bank confirming that I was an employee in good standing from 1972 through 1988.

Ex. B-3. There are three enclosures to Plaintiff's October 27th letter. The first appears to be some sort of payroll record from Security Trust Co. showing taxable wages for an unknown time period; however, the document is almost entirely redacted. The second enclosure is the Bantle email. The third enclosures appears to be a document from the SSA (Form SSA-1690 (8-80)) for "K WHELEH". The only employer listed on the SSA documentation is "VICTOR CENTRAL SCHOOL DISTRICT PRESIDENT BOARD OF EDUCATION." There is an unattributed handwritten notation at the bottom stating, "Bank reported wages under wrong EIN." See Ex. B-3.

On November 17, 2011, Janice DeFazio, Global Human Resources Senior Vice President ("DeFazio") of Bank of America sent a letter noting that she had received Plaintiff's letter of October 27, 2011, and that it was being treated as a formal claim for benefits under the Plan's claims procedure. Ex. B-4. DeFazio enclosed an excerpt of the Plan document detailing the claims process.

On February 7, 2012, DeFazio sent Plaintiff a letter ("the Claim Denial"), stating that "[a]fter a review of the Plan's records and the documentation provided, it has been determined that there is insufficient proof to establish a vested benefit in the Plan[,]" and therefore, Plaintiff's claim was denied. Ex. B-5. In particular, DeFazio explained,

> You could only be due a Plan benefit if your period of employment [with Security Trust Co. (and successor organizations)] made you eligible for Plan benefits, you participated in the Plan, and you actually accrued a vested benefit under the Plan during your period of employment. We have conducted a good faith exhaustive search. However, while predecessors to the Plan were maintained during this period [i.e., 1972 to 1988], the Plan's records do not indicate that you are eligible for a vested benefit based on your period of employment.

Ex. B-5. DeFazio noted that although Plaintiff had provided the "letter from Robert Bantle" and "details regarding [her] wages and period of employment[,]" she had "not provided any documentation (such as a terminated vested letter) to show that [she] [is] entitled to a vested benefit under the Plan." Id. As a result, Bank of America was "unable to verify" that Plaintiff was "eligible for a Plan benefit." Id. Also in the Claim Denial, DeFazio informed Plaintiff that she was permitted to appeal to the Bank of America Benefits Appeals Committee (the "Benefits Appeals Committee") within 60 days of her receipt of the Claim Denial and was permitted to submit "written issues and comments, documents, records, and other information relating to the claim . . . without regard to whether such information was submitted or considered in the initial

benefit determination." Ex. B-5. The Claim Denial advised Plaintiff that the "[f]ailure to raise issues or present evidence on review may preclude those issues or evidence from being presented in any subsequent proceeding or judicial review of the claim." Id. The Claim Denial further stated that "[i]n reviewing the decision on a benefit claim, the Benefits Appeals Committee shall have full authority to interpret and apply in its discretion the provision of the [Legacy] Plan. Its decision shall be final and binding." Id.

### C.   Plaintiff's Appeal

Plaintiff appealed the Claim Denial, relying upon the documents she previously submitted and two additional items: (1) a record from the SSA (Form L191) dated December 14, 2003,[4] indicating earnings of $4,791.26 in 1972 from Security Trust Co., and earnings of $0 in 1972 from Bath Volunteer Fire Department (Ex. B-6; repeated at Ex. B-7); and (2) an undated, unsworn letter (Ex. B-7) from a former Security Trust Co. executive Erland Kailbourne ("Kailbourne"), to Brian T. Moynihan, Chief Executive Officer of Bank of America, indicating that Plaintiff had been employed at Security Trust/Norstar Fleet from 1972 to 1988 (the "Kailbourne Letter"). Plaintiff asked the Benefits Appeals Committee to

---

[4]    The SSA form stated that if Plaintiff disagreed with the its decision, she had "60 days to ask for an appeal." There is no evidence in the administrative record that Plaintiff appealed that SSA determination.

consider these documents as "part of [her] official appeal for denial of benefits." Id. The Bank of America Benefits Appeals Committee timely acknowledged receipt of her appeal. See Ex. B-8. On May 30, 2012, the Bank of America Benefits Appeals Committee requested additional time to respond to her request and to conduct further research. Ex. B-9.

On August 2, 2012, Freda White ("White"), on behalf of the Bank of America Benefits Appeals Committee, wrote to Plaintiff informing her that her appeal had been denied because there was "insufficient proof to establish a vested benefit under the Plan." Ex. B-10. White explained that they had "conducted a further good faith exhaustive search" but had "not found any records indicating that [she] [is] eligible for a Plan benefit." Id. Furthermore, they did "not have any employment records or information confirming [her] period of employment with Security Trust Company and successor organizations." Id. White noted that none of Plaintiff's submitted documentation, including the Kailbourne Letter and the SSA earnings records, was proof of a benefit under the Plan. Id. In addition, as stated previously, Plaintiff had not provided any documentation, such as a pension benefit statement or terminated vested letter, to show that she was entitled to a vested benefit under the Plan. Id. Therefore, the Committee was unable to verify that she was eligible for a Plan benefit. Id. Plaintiff was

informed that she had exhausted her appeals but did have a right to bring a civil action under Section 502(a) of ERISA.

### C.   The Federal Court Proceeding

Plaintiff filed a complaint on May 30, 2013, and an amended complaint on July 18, 2013, alleging violations of ERISA. In the amended complaint, Plaintiff alleges for the first time that the SSA has corrected her records to show employment by Security Trust Co. of Rochester from 1972 to 1985. Defendants filed their answer with affirmative defenses on October 28, 2013.

Plaintiff filed a motion for partial summary judgment, which included a request for discovery. Defendants opposed Plaintiff's motion for partial summary judgment and request for discovery, and filed a motion for summary judgment. Plaintiff opposed Defendants' motion for summary judgment and submitted a reply in support of her summary judgment motion. Defendants submitted a reply in support of their summary judgment motion.

The motions are now fully submitted and ready for decision. For the reasons set forth below, Defendants' motion for summary judgment is granted, Plaintiff's motion for partial summary judgment is denied, and Plaintiff's request for discovery is denied.

### III. General Legal Principles

#### A. Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the burden of demonstrating the absence of any genuine issue of material fact. Celotex v. Catrett Corp., 477 U.S. 317, 323 (1986). Once the movant has carried that burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" but instead "must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotations and citation omitted). Summary judgment is not defeated based on conclusory allegations or mere speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). When evaluating a motion for summary judgment, the court must assess the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B.   Standard of Review in ERISA Cases

ERISA empowers a "participant or beneficiary" to bring a civil action "to recover benefits due to [her] under the terms of his plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). "[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed [by a district court] under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the plan."
Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989);
accord, e.g., Conkright v. Frommert, 559 U.S. 506, 512 (2010); see
also Tocker v. Philip Morris Cos., Inc., 470 F.3d 481, 487 (2d Cir.
2006). Where the plan has conferred discretion upon the
administrator, a reviewing court "will not disturb the
administrator's ultimate conclusion unless it is arbitrary and
capricious." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir.
1995); accord Tocker, 470 F.3d at 487 ("[I]t is now settled that if
a plan administrator clearly has been granted discretionary
authority in the plan documents, a court will defer to the
administrator's decision.") (internal citation omitted). "The grant
of discretionary authority thus narrows the range of judicial
oversight and shields a plan administrator's decision from a more
searching and broader de novo review." Tocker, 470 F.3d at 487.

## IV. Plaintiff's Motion for Partial Summary Judgment and Request for Discovery

### A.   Partial Summary Judgment Motion

#### 1.   Substantive Deficiencies

Plaintiff's sole basis for partial summary judgment in her
favor is that the "certified Social Security record and the
personal statements of the Vice President of Human Resources and
the CEO of her former employer, Whelehan satisf[y], as a matter of
law, that she has, at least, a colorable claim of entitlement to

benefits from the BOA Plan and therefore is a 'participant' in the BOA Plan." Dkt #15-3, p. 6 of 7.

Defendants argue that Plaintiff's motion is substantively defective because it impermissibly seeks to circumvent the proper standard of review. In effect, Defendants explain, Plaintiff is asking this Court to apply a de novo standard of review and determine, in isolation from all other aspects of the Claim Denial, that she is a "participant" under the Plan. Defendants contend that this is improper because the "arbitrary and capricious" standard of review is undisputedly applicable to the Committee's denial of her claim for retirement benefits.

According to Plaintiff, if she meets the definition of "participant" under § 3(7) of ERISA, 29 U.S.C. § 1002(7), then she "was an employee of the Bank for a sufficient period of time to accrue a pension." Dkt #15-3, p. 3 of 7. ERISA § 3(7) defines "participant" as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). The definition of "participant" in ERISA § 3(7), along with the other definitions in  this section, are "[f]or purposes of this subchapter[,]" 29 U.S.C. § 1002(7), i.e., Subchapter I (Protection of Employee Benefit Rights) of ERISA. Simply because an individual meets the definition of "participant"

for purposes of demonstrating a violation of the procedural requirements or employer disclosure obligations set forth in Subchapter I of ERISA, does not mean that the individual is, in fact, entitled to receive benefits under a particular employee benefit plan governed by ERISA. Plaintiff's argument thus is wide of the mark. Not surprisingly, the cases Plaintiff cites do not support this legally incorrect argument.

For instance, Plaintiff cites Gorini v. AMP, Inc., 94 F. App'x 913 (3d Cir. 2004) (unpublished opn.), for the proposition that an individual "need not show that she is entitled to benefits to be [sic] satisfy the definition of 'participant'" under ERISA § 3(7). Dkt #15-3, p. 4 of 4. Gorini involved the duty of a plan administrator under ERISA §§ 104(b)(4), 502(c)(1) (29 U.S.C. §§ 1024(b)(4), 1132(c)), to provide certain plan-related documents upon request to any plan "participant" as defined in ERISA § 3(7), 29 U.S.C. § 1002(7). The plaintiff in Gorini obtained summary judgment on a narrow, non-dispositive issue-that his employer failed to disclose documents related to certain severance plans because it erroneously found that the plaintiff was not a "participant" in the plans for purposes of being owed disclosure of plan documents under the applicable sections of ERISA. Gorini did not involve a determination of whether the plaintiff actually was entitled to benefits under the plan in question.[5]

---

[5]

Plaintiff does not cite Gorini in support of her request for discovery, and indeed, the disclosure of documents is not at issue in this case. As Defendants

-13-

In short, Plaintiff has misapprehended the legal import of meeting the definition of "participant" under ERISA § 3(7), 29 U.S.C. § 1002(7). She then improperly has attempted to merge this definition with the definition of "Participant" contained in the Plan here at issue. Even if the Court were to grant summary judgment in her favor and find that she is a "participant" as defined by ERISA § 3(7), such a finding would have no favorable effect on her claim against Defendants, because being a "participant" for purposes of ERISA Subchapter I is not the equivalent of being entitled to benefits under the Plan at issue in this lawsuit.

### 2.   Procedural Deficiencies

Plaintiff has committed various procedural errors that mandate rejection of her request for partial summary judgment. In particular, Plaintiff has failed to comply with Rules 56(c) and 56(d) of the Federal Rules of Civil Procedure. Rule 56(c) provides, in pertinent part, that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute." FED. R. CIV. P. 56(c). "If a party . . . fails to properly address another party's assertion of fact as required by

---

have explained, Plaintiff did not seek any documents and records relevant to her claim from Bank of America  even after being advised on at least two separate occasions that she was permitted to make such a request.

Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion. . . ." FED. R. CIV. P. 56(e).

In addition, Rule 56(a)(2) of the Local Rules of Civil Procedure for the Western District of New York ("W.D.N.Y. Local Rules"), provides in relevant part as follows:

> The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs . . . . Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.

W.D.N.Y. Local Rule 56(a)(2).

Here, Plaintiff has completely failed to comply with the applicable rules, quoted above. This failure is not excused by her purported need for discovery. See Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP, 612 F. Supp.2d 330, 348 (S.D.N.Y. 2009) (where "the Rule 56[d] affidavit makes no such showing [of a justified failure to come forward with admissible evidence on the point in question], the failure to admit or deny is not justified by a general claim that [the party] has not had discovery"). The Court accordingly deems that Plaintiff has admitted the veracity of the statements in Defendants' Rule 56 Statement. See, e.g., Fuentes v. Balcer, 10-CV-684, 2013 WL 276679, at *1, n. 3 (W.D.N.Y. Jan. 24, 2013) (granting defendants' motion for summary judgment where plaintiff failed to submit the responding statement required by

Local Rule 56(a)(2)); <u>Cowart v. McGinnis</u>, 02-CV-817F, 2007 WL 4030000, at *3 (W.D.N.Y. Nov. 15, 2007) (similar).

In addition, the Court agrees with Defendants that Document No. 1 (Dkt #15-2, pp. 2-4 of 6) in Plaintiff's Rule 56 Appendix (Dkt #15-2) must be stricken. Document No. 1 purports to be a corrected SSA record indicating earnings for Plaintiff from Security Trust Co. of Rochester for the years 1972 through 1986; from Victor Central School District for the first two quarters of 1972; from Security New York State Corporation for 1983; and from Fleet Norstar Financial Group for 1985. <u>See</u> Dkt #15-2, pp. 3-4 of 6. Plaintiff states in her memorandum of law that she "has *also* provided the BOA Plan with a certified record of her Social Security earnings showing employment during the relevant period with Security Trust of Rochester." Dkt # 15-3, p. 2 of 7 (emphasis supplied). However, Plaintiff did *not* provide this document in support of her claim to the Benefit Appeals Committee, and it was *not* part of the administrative record. <u>See</u> Exs. B-1 through B-10. The first reference to the alleged SSA record correction was in Plaintiff's amended complaint (Dkt #5, ¶ 31) filed on July 18, 2013. As set forth above, the final decision on Plaintiff's appeal occurred nearly a year earlier, on August 2, 2012. The certified SSA record was not among the SSA records Plaintiff submitted at the administrative level. <u>See</u> Exs. B-1 through B-10. Therefore, the certified SSA record submitted as Document No. 1 to Plaintiff's Rule 56 Appendix is outside the administrative record and may not be

considered by this Court. See Brown v. Board of Trustees of Bldg. Service 32B-J Pension Fund, 392 F. Supp.2d 434, 446 (E.D.N.Y. 2005) ("[I]n determining whether the Trustees' denial of benefits was arbitrary and capricious, it is proper to consider nothing more and nothing less than the administrative record. Because plaintiff's social security file was not part of the administrative record, it has not been considered for purposes of deciding the parties' cross-motions for summary judgment.").

With regard to Defendants motion to strike Plaintiff's Appendix Documents Nos. 2 and 3 (Dkt #15-2, pp. 5-6 of 6) on the grounds that they are unsworn documents and constitute inadmissible hearsay, both of these documents are already part of the administrative record. Therefore, the Court denies Defendants' request as moot.

**B.   Plaintiff's Request for Discovery**

Plaintiff's opposition to Defendants' motion for summary judgment is premised on her assertion that discovery is allegedly needed regarding Defendants' efforts to obtain documents relevant to her claim, such as the issuance of notices to vested terminees. Plaintiff argues that the Court must deny, or defer consideration of, Defendants' request for summary judgment until discovery on these items can be obtained. The Court agrees with Defendants that Plaintiff has not made the showing required to entitle her to the requested discovery and that, in any event, the request is an improper attempt to shift the burden of proof to Defendants.

First, as Defendants point out, Plaintiff earlier represented to the Court (Payson, M.J.), in a letter dated November 27, 2013, that discovery was neither necessary nor appropriate in this ERISA case, because it is based on an administrative record. <u>See</u> Dkt #28-2, p. 2 of 2 ("Counsel have conferred and agreed that . . . no discovery is appropriate or needed at this time. . . ."). Plaintiff's asserted need for discovery thus is not only belated, but is flatly contradicted by the record, wherein her attorney represented to a judge of this Court that no discovery plan was needed before the filing of summary judgment motions. <u>See</u> <u>id.</u>

Second, Plaintiff has not shown that the requested discovery would give rise to a genuine issue of material fact warranting denial of Defendants' summary judgment motion. Rule 56(d) (formerly Rule 56(f)) of the Federal Rules of Civil Procedure permits a party to oppose a motion for summary judgment on the grounds that it needs discovery only where it "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). The affidavit must set forth (1) the discovery sought, (2) how such discovery is reasonably expected to create a genuine issue of fact, (3) what efforts the party opposing summary judgment has made to obtain the discovery, and (4) why she was unsuccessful in obtaining the discovery. <u>Hudson River Sloop Clearwater, Inc. v. Dept. of Navy</u>, 891 F.2d 414, 422 (2d Cir. 1989) (citation omitted). In addition, the district court must ensure that the discovery sought is "material to the opposition of

the summary judgment motion." Sage Realty Corp. v. Insurance Co. of N. America, 34 F.3d 124, 128 (2d Cir. 1994) (citation omitted). Where the party opposing summary judgment fails to present the required Rule 56(d) affidavit or declaration, the "application [for discovery] fails on this basis alone." Cross v. State Farm Ins. Co., 926 F. Supp. 2d 436, 446 (N.D.N.Y. 2013) (citing Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)). Merely referencing the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(d) affidavit. Paddington Partners, 34 F.3d at 1137. Here, Plaintiff has not presented a proper affidavit or declaration in support of her request for discovery, and thus her Rule 56(d) application fails on this basis. Cross, 926 F. Supp.2d at 446.

Moreover, Plaintiff has not sufficiently justified the need for the requested discovery. Plaintiff accuses Defendants of "fail[ing] to collect information from the Bank" and asserts that discovery is needed regarding Defendants' efforts to obtain payroll information, the issuance of notices to vested terminees, the consideration given to SSA records, and the Committee's request for her employment records. By demanding that Defendants prove what type of document review they conducted, Plaintiff is impermissibly seeking to shift the burden to Defendants to disprove her entitlement to benefits under the Legacy Plan. See, e.g., Amin v. Bank of Am. Pension Plan for Legacy Companies, No. 11-13789, 2013 WL 2634639, at * (E.D.

Mich. June 12, 2013). The plaintiff in <u>Amin</u> asserted that the plan administrator improperly relied on the absence of affirmative evidence in the administrative record to show that the plaintiff ever accrued a vested benefit under the plan. The plaintiff in <u>Amin</u> argued, as Whelehan does here, that it was the administrator's burden to review the record of her employment with the predecessor banks, and to point to specific terms of the plan as demonstrating why this employment history failed to establish a right to vested pension benefits. <u>See</u> <u>Amin</u>, 2013 WL 2634639, at *5. The district court in <u>Amin</u> disagreed, concluding that the plaintiff's challenge rested upon an impermissible attempt to shift a burden that "the law places squarely on [the employee]-namely, the burden to prove that she is entitled to pension benefits under the [p]lan." <u>Id.</u> (citing <u>Mahone v. Pipefitters Local 636 Fringe Benefits Fund</u>, No. 09-13621, 2011 WL 3440122, at *5 (E.D. Mich. Aug. 8, 2011) ("It is the person claiming benefits that bears the burden to prove that he is entitled to those benefits under the plan. Where the plan administrator denies benefits based on the lack of evidence, *it is incumbent on the claimant to point to evidence in the record that contradicts such a finding and demonstrates that the decision, therefore, is arbitrary and capricious.*") (emphasis supplied)).

 The Court agrees with the district courts' reasoning in <u>Amin</u> and <u>Mahone</u> and finds that Plaintiff's contention here is inconsistent with the rule that an ERISA claimant has the burden to establish her entitlement to benefits. Plaintiff has not identified

any evidence in the administrative record that sheds any light on her status as a vested participant under the Plan. As Defendants point out, Plaintiff has never submitted a pension benefit statement, terminated vested letter, prior benefit calculation, or other evidence establishing a right to benefits under the Plan. Plaintiff never requested such documentation from Bank of America, despite being informed on several occasions of her right to request copies of documents relevant to her claim at no cost to her. If Plaintiff wanted additional evidence to be considered during the appeals process, it was her burden to submit it. See Benoit v. Prudential Ins. Co. of Am., 07-CV-6407, 2008 WL 2917492, at *8 (W.D.N.Y. July 24, 2008) (finding that plaintiff had numerous opportunities to refute the finding that he was intoxicated at the time of the accident and yet did not submit proof during any of the intervening periods he appealed the denials of benefits from insurer).

Furthermore, with regard to Plaintiff's assertion that discovery would unearth a conflict of interest by the Plan Administrator improperly, the Court may properly decline to consider this argument, which was raised for the first time in opposition to Defendants' summary judgment motion. See Playboy Enters., Inc. v. Dumas, 960 F. Supp. 710, 720 n. 7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.")(collecting cases). Even if there were a conflict of interest, it would not change the standard of review applicable in

this case. See <u>McCauley v. First Unum Life Ins. Co.</u>, 551 F.3d 126, (2d Cir. 2008) (a conflict of interest is to be "*weighed as a factor* in determining whether there [wa]s an abuse of discretion" under the arbitrary and capricious standard) (quoting <u>Metropolitan Life Insurance Co. v. Glenn</u>, 554 U.S. 105, 128 S. Ct. 2343, 2348 (2008) (quotation marks omitted; emphasis in <u>Glenn</u>)).

## V.   Defendants' Motion for Summary Judgment

Defendants argue that the undisputed material facts establish that the decision to deny Plaintiff's claim for benefits was not arbitrary and capricious, because Plaintiff failed to provide competent proof establishing that she had a vested benefit under the Plan. As Defendants note, Plaintiff has not disputed any of the material facts set out in their Rule 56 Statement of Material Facts Not In Dispute. Indeed, Plaintiff has never submitted, during the course of this litigation or during the administrative proceedings, a sworn statement attesting to her employment history, let alone to her contribution to an employee benefit plan.

As noted above, Plaintiff does not dispute that the Plan delegates discretionary authority to the Plan Administrator to, <u>inter alia</u>, determine eligibility for benefits, and therefore the decision to deny benefits is reviewed under the arbitrary and capricious standard. <u>Miller v. United Welfare Fund</u>, 72 F.3d 1066, 1070 (2d Cir. 1995). "The arbitrary and capricious standard holds that a trustee's decision shall not be overturned on a [29 U.S.C.] § 1132(a)(1)(B) matter, absent special circumstances such as fraud

or bad faith, if 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund, 900 F.2d 1138, 1142 (7th Cir. 1990) (quoting Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir. 1985)); accord, e.g., Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1991). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight," and "[t]he [plan administrator] must articulate a rational connection between the facts found and the choice made." Bowman Transp., Inc. v. Arkansas—Best Freight System, Inc., 419 U.S. 281, 284 n. 2 & 285 (1974) (internal quotations omitted).

Due to the narrowness of this scope of review, the Court may not substitute its own judgment for that of the plan administrator as if it were considering, anew, the issue of eligibility. Instead, the Court must limit its review to the evidence that was in the administrative record available to the plan administrator. Miller, 72 F.3d at 1071; see also Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 615 (6th Cir. 1998) (citation omitted).

With the above standards in mind, the Court now turns to the benefit determination at issue here—namely, the Benefit Appeals Committee's decision that Plaintiff failed to produce sufficient proof of her entitlement to pension benefits under the Plan. As discussed above, the crux of Plaintiff's summary judgment argument is that Defendants have failed to support the reasoning process by

which the Benefits Appeals Committee determined that she was ineligible for benefits. According to Plaintiff, it was the Benefit Appeals Committee's burden to review the record of her employment with the predecessors to the Defendant bank, and then point to specific terms of the Plan as demonstrating why this employment history failed to establish a right to vested pension benefits.

As this Court has already determined in connection with Plaintiff's discovery request, this argument reverses the appropriate assignment of evidentiary burdens under ERISA and seeks to require Defendants to prove that Plaintiff is not entitled to benefits. However, the law places the burden squarely on Plaintiff to prove, affirmatively, that she is entitled to pension benefits under the Plan. See Ruttenberg v. United States Life Ins. Co. in City of New York, 413 F.3d 652, 663 (7th Cir. 2005) (holding that ERISA plaintiff seeking to enforce benefits under the policy bears burden of proving his entitlement to contract benefits); Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998) ("A plaintiff suing under this provision [29 U.S.C.A. § 1132(a)(1)(B)] bears the burden of proving his entitlement to contractual benefits.") (citing Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir. 1992); Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 46 (3d Cir. 1993) (holding that plaintiff bore burden under plan to submit medical evidence to support eligibility for benefits).

Based upon the parties' submissions, it appears that the following documents were submitted by Plaintiff over the course of the claims process:

- the Bantle Email, stating that Plaintiff had been a full-time employee at Security Trust Co. and its successor organizations from July 1972, through June 1988;
- a form purportedly submitted to the SSA by Security Trust Co. for one quarter of 1972, on which the name "KA Whelehan" appears;
- uncertified documentation from the SSA purportedly showing earnings for Plaintiff for the Bath Volunteer Fire Department, which she asserts was the result of an incorrect EIN (i.e., the EIN for the fire department) being linked to her Social Security Number;
- a redacted payroll record from Security Trust Co. showing taxable wages for an unknown time period;
- Form SSA-1690 for "K WHELEH" with an unattributed handwritten notation at the bottom stating, "Bank reported wages under wrong EIN";
- Form SSA-L191 dated December 14, 2003, indicating earnings of $4,791.26 in 1972 from Security Trust Co., and earnings of $0 in 1972 from Bath Volunteer Fire Department; and
- the Kailbourne Letter stating that Plaintiff had been employed at Security Trust/Norstar Fleet from 1972 to 1988.

See Exs. B-1 through B-10. The Benefit Appeals Committee determined that this evidence did not establish that Plaintiff had a period of employment with Security Trust Co. (and successor organizations) that made her eligible for Plan benefits, that she participated in the Plan, or that she actually accrued a vested benefit under the Plan during her period of employment. After reviewing the administrative record, the Court agrees with Defendants that this conclusion is not arbitrary and capricious; the Benefit Appeals Committee was able to offer a reasoned explanation, based on the

evidence (or lack thereof), for the outcome of Plaintiff's claim. See Mahone, 2011 WL 3440122, at *6 ("The plaintiff has not identified any evidence in the administrative record that suggests that the [employer] contributed fringe benefits on the plaintiff's behalf or otherwise qualified as a contributing employer within the meaning of the plan. The defendant's conclusion that the Board was not a contributing employer was not arbitrary or capricious.")

The Court notes that Plaintiff has come forward with even less supporting documentation than the claimant in Amin, for instance, who had evidence that she contributed to some type of employee benefits plan at some time during her tenure with the employer. See Amin, 20132634639, at *6 ("[T]he W-2 statements produced by Plaintiff, which evidently disclose contributions to some sort of pension, retirement, or deferred compensation plan during at least some of her years of employment, are too vague and ambiguous to serve as evidence of contributions to the particular pension plan named as a Defendant here, or to the pension plans offered by the predecessors to the Defendant bank.").

Moreover, consideration of the certified SSA record submitted as Document No. 1 to Plaintiff's Rule 56 Appendix (which was not part of the administrative record) does not change the result or render the Committee's decision arbitrary and capricious. Even assuming that this document, showing wages reported to the SSA for Plaintiff from Security Trust Co. for the years 1972 through 1986, established Plaintiff's years of service at Security Trust Co., it

does not establish that she was enrolled in a pension plan, or that
the years she worked there equated to years of service for purposes
of determining benefits. See Amin, 2013 WL 2634639, at *6 ("[W]hile
Plaintiff points to the evidence of her twelve years of service
with the predecessors to the Defendant bank, the Committee
explained in its denial letter that "'years of service' for
purposes of determining severance pay . . . does not necessarily
equate to 'years of service' for the Plan," and Plaintiff has not
identified any Plan provisions that would require that each year of
her employment be counted toward fulfilling the vesting
requirements for Plan benefits. . . .") (internal citation to
record omitted). In other words, proof of Plaintiff's employment
with a Bank of America predecessor bank such as Security Trust Co.
would not constitute conclusive proof of her entitlement to
retirement benefits under the Legacy Plan. Indeed, there is no
affirmative evidence in the record that elucidates Plaintiff's
status as vested under the Plan (or any comparable pension plan
offered by any predecessor banks). The Benefit Appeals Committee
informed Plaintiff of several different documents she could submit
that would be probative of her claim for benefits–such as a
terminated vested letter–but she never submitted such documents or
requested any documents relevant to her claim from Bank of America.
Under these circumstances, the Benefit Appeals Committee cannot be
deemed to have acted arbitrarily or capriciously in determining
that the motley array of uncertified, ambiguous documents Plaintiff

submitted in support of her claim did not establish her entitlement to benefits.

## VI.   Conclusion

For the foregoing reasons, Plaintiff's partial motion for summary judgment and request for discovery (Dkt #15) are denied with prejudice. Defendants' motion for summary judgment (Dkt #22) is granted, and the amended complaint (Dkt #5) is dismissed in its entirety with prejudice. The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     March 17, 2014
           Rochester, New York